UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ISAIAH BOND,<br><br>*Plaintiff,*<br><br>v.<br><br>JANE ROE,<br><br>*Defendant.* | Civ. No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Isaiah Bond ("Plaintiff" or "Bond"), by and through his attorneys, Nesenoff & Miltenberg, LLP, as and for his Complaint against Jane Roe[1] ("Defendant" or "Roe"), respectfully alleges as follows:

**THE NATURE OF THIS ACTION**

1.   This action arises out of the malicious, false allegations and coercion attempt lodged against Plaintiff Isaiah Bond, a rising football star and prospective early round selection in the upcoming National Football Leage ("NFL") Draft, in connection with a malicious and false smear campaign in which the Defendant has sought to derail Plaintiff's future career prospects.

2.   Unfortunately, Bond is not the first rising star to be falsely accused and likely will not be the last. Bond, however, is the current face of the disturbing phenomena in which athletes and other high-profile individuals are targeted in a revenge scheme after a relationship gone wrong.

3.   It is not a crime to be an athlete. It is not a crime to decline interest in someone romantically. However, it *is* illegal to falsely accuse a man of sexual assault. Regret does not rewrite consent.

---

[1] Jane Roe is a pseudonym.

1

4. Notably, Roe initially was not upset with her encounter with Bond, but rather stated that she was upset with the lack of affection she received from Bond immediately following the encounter. Roe, on information and belief, was upset that she was not being "chosen" by Bond thereafter.

5. When Jane Roe entered Plaintiff's apartment, she entered with a plan which she intended to execute. Indeed, Jane Roe's communications gave the indication she sought financial gain—either in the form of child support or a relationship, which is, unfortunately, yet another not uncommon phenomenon for men in Bond's position. Indeed, Jane Roe expressed an obvious desire to engage in specific sexual acts to increase the likelihood of pregnancy, and, unbeknownst to Bond, intentionally delayed her encounter with Bond until the time of her ovulation.

6. When Jane Roe's Plan A failed, however, she quickly moved to execute her Plan B: Revenge.

7. Plaintiff was relentlessly pursued and preyed upon for months by Defendant Jane Roe, a female *more than eight years* his senior. For nearly four months, Jane Roe did anything she could to get Bond's attention—Instagram story reply after story reply, which often went unanswered by Bond, and, worse, when Bond did not respond to Defendant's text messages, Jane Roe would send Bond explicit photos taken in work clothing at a facility servicing minors, in which she is employed.

8. After four months of her relentless pursuit, Jane Roe finally got her opportunity to meet Bond, when he invited her over to his apartment.

9. Jane Roe and Bond engaged in a consensual sexual encounter at Plaintiff's apartment on February 4, 2025. However, on information and belief, Jane Roe later regretted the

encounter because Bond did not walk her to her car afterwards nor show her the attention she sought.

10. Importantly, Jane Roe and Bond spent time together at Bond's apartment *after* the consensual encounter, and Jane Roe never mentioned an alleged assault. However, Jane Roe *did make* the indirect threat that, due to Bond's high-profile status, Bond "better be careful not to catch a case."

11. At that point, Bond, uncomfortable with Jane Roe's actions, asked Jane Roe to leave his apartment.

12. Only then, feeling rejected and not chosen, and failing to implement her scheme, did Defendant double down and attempt to claim that Plaintiff had allegedly assaulted her during their consensual sexual encounter, demanding "5k" ($5,000).

13. Notwithstanding her malicious and false allegations, Jane Roe waited *days* to go to the hospital for a SANE exam following the encounter—more than enough time to calculate and commence her smear campaign.

14. Jane Roe has continued her malicious and intentional smear campaign against Bond in the form of making statements to law enforcement accusing Bond of sexual assault—statements which Roe blatantly knew were false at the time they were made. Jane Roe's statements were made with the sole intention of derailing Bond's future NFL career prospects and endorsements.

15. Plaintiff Isaiah Bond therefore brings this action against Defendant Jane Roe for Defamation *Per Se*, False Light, Tortious Interference with Prospective Business Advantage, and Intentional Infliction of Emotional Distress.

## THE PARTIES

16. Plaintiff Isaiah Bond is a natural person and a resident of the state of Georgia.

17. Defendant Jane Roe is natural person and a resident of the state of Texas.

## JURISDICTION AND VENUE

18. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

19. This Court has personal jurisdiction over Defendant Jane Roe on the grounds that she is a resident of the State of Texas.

20. Venue is proper in this Court because the Defendant resides in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

A. **Plaintiff Isaiah Bond's Background**

21. Plaintiff Isaiah Bond is a rising football star and projected top draft pick in the upcoming 2025 NFL Draft.

22. Bond grew up in Buford, Georgia, a suburb of Atlanta, and attended Buford High School where he was a stellar football and track athlete.

23. Bond's parents instilled the highest standards of hard work, integrity, and respect in Plaintiff from a young age.

24. Plaintiff Bond has worked his entire life to get to where he currently is professionally—at the cusp of the NFL Draft. Bond works out nearly every single day, sometimes twice a day, foregoing social commitments for the sake of his athletic career.

25. Indeed, Plaintiff drew attention due to his skill from the time he was six years old, as a star football player.

26. After high school, Bond played football for two years at the University of Alabama before transferring to the University of Texas for the 2024-2025 season.

27. Throughout Bond's collegiate career, he was a standout wide receiver. Plaintiff garnered numerous high-profile name, image, and likeness campaigns and quickly rose to become a household name amongst college football fans.

28. Indeed, Bond earned a starting position as a true freshman at the University of Alabama and made one of the most famous plays in University history before transferring to the University of Texas for his final collegiate year.

29. Isaiah Bond has poured his entire being, his heart and soul, into his football career, and finally has his dream within reach. Accordingly, Plaintiff would never take any action to jeopardize the career that he has worked so hard for.

**B. Bond Meets Jane Roe Via Instagram**

30. In or around October 2024, Defendant Jane Roe, a 28-year-old juvenile detention center nurse, followed 20-year-old Bond on Instagram.

31. On information and belief, Jane Roe follows numerous rising star athletes on Instagram in an attempt to get their attention. Indeed, Jane Roe follows a multitude of NFL rookies and NFL draft contenders.

32. In or around October 11, 2024, Bond and Roe began exchanging communications via Instagram DM.

33. When Bond failed to respond to Roe, Roe sent two messages in a row to Bond, and even included her phone number.

34. Bond sent Roe a text message at approximately 7:25 p.m. on October 11, 2024, introducing himself.

35. Roe immediately responded to Bond, calling him "daddy."

36. Not seeking to continue the conversation, Bond did not respond.

**C. Roe Desperately Grasps for Bond's Attention**

37. The next day, after Bond did not respond to her previous messages, Roe texted Plaintiff a photo of her in bed wearing lingerie saying "when will I see you baby."

5

38. Bond indicated that he was in Austin and Roe stated that she would come to Austin to see him.

39. On October 19, 2024, in another attempt to gain Bond's attention after he did not reply, Roe sent Bond an explicit photograph of herself from her place of work, with the message "so when will be a good day to come see you."

40. Bond deflected the message, ignoring the photograph, and stated that he needed to check his schedule.

41. On October 20, 2024, Roe texted Bond "how are you feeling daddy."

42. Bond did not respond.

43. On October 31, 2024, Roe again asked Bond "Hey daddy! When can I come see you."

44. Bond did not respond.

45. Roe texted Bond, who was 20 years old at the time, a photograph of a Texas Longhorns shot glass appearing to be filled with liquor on November 2, 2024, saying "thinking of you [kiss face emoji]".

46. Again, Bond did not respond.

47. On November 14, 2024, Roe sent Bond multiple risqué photographs *again* saying, "when can I come see you baby."

48. Plaintiff finally responded four days later, saying good morning.

49. Roe, clearly irritated with Bond's lack of attention or affection for her, sent Bond a text message on November 18, 2024, "GoodMorning [sic] and I'm free ALOT [sic] these times, but it just depends on you! You take like 3 weeks to respond!"

6

50. Having not yet planned a time to see each other, Roe sent Bond another text message on January 11, 2025 stating that she wanted to engage in sexual acts with Plaintiff, and continued to attempt to set a date to see Plaintiff.

51. On February 4, 2025, Roe unprompted, sent Bond a text message that read, "I gotta [sic] tell you something" and continued to say, "I'm freaky as shit the nastier the better."

52. Roe then specifically expressed desire to engage in unprotected intercourse with Plaintiff.

53. Interestingly, Roe then attempted to delay meeting Bond until February 7 which, on information and belief, would align with Roe's ovulation.

54. When Bond stated that he was busy on February 7, Roe then tried to set the date to Thursday, February 6.

55. After Plaintiff stated that only February 4 would work for him, Roe agreed to drive to Bond's apartment.

56. Roe arrived at Bond's apartment at approximately 6:15 p.m. on February 4, 2024.

57. About 30 minutes after Roe arrived, Bond's agent arrived at Plaintiff's apartment for a meeting with Plaintiff. Bond instructed Roe to remain in his room during his meeting.

58. At approximately 8:28 p.m., when Plaintiff was still meeting with his agent, and after not receiving the undivided attention that she desired from Plaintiff, Roe sent Bond a text message from inside Plaintiff's room stating, "Want that dick in me real bad."

59. At approximately 8:45 p.m., after Plaintiff's agent left his apartment, Bond and Roe consumed one glass of wine each while they talked to each other. Neither party was intoxicated. Roe initiated and encouraged the alcohol consumption, despite Bond being underage.

60. Bond and Roe then engaged in consensual sexual activity.

7

61.     Bond did not engage in unprotected vaginal intercourse with Roe, despite Roe's request. On information and belief, this thwarted part of Roe's scheme for financial gain.

**D. Roe is Upset with Bond's Lack of Affection Following the Encounter, and Falsely Accuses Plaintiff of Sexual Assault as Revenge**

62.     After the encounter, Plaintiff and Roe relaxed in Plaintiff's bed and casually engaged in conversation.

63.     Roe never mentioned pain, being uncomfortable, or assault. Roe voluntarily remained in Bond's bed with him and continued discussion.

64.     Roe then pointed out Bond's "high profile" status, and told him that due to his status, he "better be careful not to catch a case."

65.     Bond was completely caught off guard by Roe's comment and felt that it was inappropriate to joke about his career in that manner.

66.     Roe then left Bond's apartment at Plaintiff's request at approximately 9:15 p.m.

67.     To Bond's complete shock and surprise, Roe then falsely claimed over text message that night for the first time that she "told Plaintiff to stop" and "was in a lot of pain."

68.     Roe then demanded "$5k" ($5,000) from Bond and again claimed that she told Plaintiff to "stop" during the encounter.

69.     Plaintiff denied Roe's allegations.

70.     Roe, who was, on information and belief, offended that she did not receive the attention and affection she wanted, stated that she was upset with Bond "**Cause you were acting funny as hell AFTER**." (emphasis supplied).

71.     In other words, **Roe was not upset with the encounter.** *Roe was upset with Plaintiff's actions after the encounter*.

72. Notably, despite her egregious allegations, Roe waited several days before she went to the hospital after the encounter.

73. On or around February 6, 2024, Defendant Jane Roe made a series of statements to the Frisco Police Department, including but not limited to: (i) stating that Plaintiff sexually assaulted her on the night of February 4, 2025; (ii) stating that she told Plaintiff to "stop" during anal intercourse; (iii) stating that she attempted to push Plaintiff off of her during intercourse; and (iv) claiming that Plaintiff covered Roe's mouth when she allegedly told Plaintiff to stop (collectively the "False Statements").

74. On information and belief, between approximately February 6, 2024 to date, Roe has reiterated the False Statements to numerous third parties including but not limited to her friends and family.

75. On information and belief, Roe waited to see if Bond would come back to her in a relationship context before she proceeded forward with her false allegations. When Bond did not reach out to set a second date, Roe embarked on her smear campaign with the intent of derailing the rest of Bond's future.

76. Bond and Roe did not speak again following the February 4 text exchange until February 20, 2025, when Roe again emphasized that her anger was not with the encounter itself, but with Bond's actions after the encounter, stating "It's been two weeks and I haven't heard from you at all…"

77. The next day, at approximately 8:28 a.m., Roe sent Bond a text message stating, "Some accountability, that's it that's all I wanted from you to be able to move on from this."

78. On information and belief, Roe's February 21 message was Roe's one last shot at trying to extort either a larger paycheck or to be chosen by Bond romantically.

### E. Roe's False Statements Generate a Media Blitz

79. As a result of Roe's False Statements, a criminal investigation was initiated against Plaintiff for sexual assault.

80. On information and belief, Roe has met with the Frisco Police Department investigators numerous times to date, and has cherry-picked self-serving evidence to hand over.

81. Significantly, despite interviewing Roe multiple times, the Frisco Police Department did not interview Bond once leading up to his arrest.

82. The Frisco Police Department intentionally held the case with no attempt to interview Plaintiff until immediately prior to the draft, painting him into a corner with no real time to prove his innocence before irrevocable damage is done.

83. As a result of Roe's False Statements and cherry-picked evidence, Bond has been painted in the public eye as a dangerous sex criminal.

84. As a result of Roe's False Statements and cherry-picked evidence, an arrest warrant was issued for Plaintiff by the Frisco Police Department.

85. As a result of Roe's False Statements and cherry-picked evidence, a media blitz has been generated containing Roe's heinous and false allegations.

86. As a result of Roe's False Statements and cherry-picked evidence, Plaintiff's entire professional future, including his NFL Draft stock and endorsements deals, has been jeopardized.

### AS AND FOR A FIRST CAUSE OF ACTION
### Defamation *Per Se*

87. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

88. From approximately February 4, 2025 to the present, Defendant Jane Roe, with actual knowledge of the falsity of the statement and/or with reckless disregard for the truth, made

False Statements about Plaintiff to third party individuals, including Roe's friends and family, stating that Plaintiff sexually assaulted her on the night of February 4, 2025.

89. From approximately February 6, 2025 to the present, to the present, Defendant Jane Roe, with actual knowledge of the falsity of the statement and/or with reckless disregard for the truth, made False Statements about Plaintiff to the Frisco Police Department, stating that Plaintiff sexually assaulted her on the night of February 4, 2025.

90. The clear and unambiguous meaning of the False Statements, when considered in the full context of her relationship with Plaintiff and subsequent crusade to destroy Plaintiff's career and his professional and personal reputation, is that Plaintiff is a dangerous sexual predator.

91. False imputations of criminality are defamatory *per se* under Texas law.

92. Jane Roe's False Statements have directly and proximately caused reputational damage, in that her statements have lowered Plaintiff's reputation in the minds of his professional community and the public at large, and have deterred third parties, including NFL scouts, from associating with him.

93. Jane Roe's False Statements have directly and proximately caused pecuniary damages including, but not limited to, loss of professional and business opportunities.

94. Jane Roe's False Statements have directly and proximately caused Plaintiff emotional distress and mental anguish.

95. In addition to monetary relief, Plaintiff seeks equitable relief in the form of an injunction precluding Defendant Jane Roe from further defaming Plaintiff and referring to him as a sex criminal.

96. As a result of Jane Roe's defamation of Plaintiff, he has suffered damages in an amount to be determined at trial, seeks equitable relief in the form of an injunction precluding

Defendant Jane Roe from referring to Plaintiff as a sex criminal, and is entitled to any further relief the court deems just and proper. As a result of Defendant Jane Roe's intentional, malicious and brazen defamation, Plaintiff is also entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### False Light

97. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

98. From approximately February 4, 2025 to the present, Defendant Jane Roe made False Statements to the Frisco Police Department as well as third party individuals, wherein Defendant Jane Roe knowingly, or with reckless disregard for the truth, divulged false and misleading private communications between herself and Plaintiff, which cast Plaintiff in a false and negative light.

99. Defendant Jane Roe's intentionally selective and misleading release of information and false allegations against Plaintiff was intended to, and did, falsely cast Plaintiff as a sexual predator and Jane Roe as a persecuted, innocent victim.

100. Defendant's actions and False Statements had the clear capacity to give rise to a false public impression as to Plaintiff.

101. Defendant's actions placed Plaintiff in a false light that would be highly offensive to a reasonable person.

102. Defendant's actions caused widespread backlash against Plaintiff, including a police investigation and arrest, online articles painting Plaintiff as a sexual predator, as well as a considerable negative impact on Plaintiff's ability to be drafted in the upcoming NFL Draft.

103. Defendant Jane Roe acted with malice, had knowledge of the falsity and/or misleading nature of her statements, or, at minimum, acted with reckless disregard as to the falsity of the statement and the light in which Plaintiff would be placed.

104. Defendant's actions have directly and proximately caused damage to Plaintiff's reputation in the eyes of NFL scouts, his peers, colleagues, and the public at large.

105. Defendant's actions have directly and proximately caused pecuniary harm, including, but not limited to, loss of professional and business opportunities.

106. Defendant's actions have directly and proximately caused Plaintiff emotional suffering and mental anguish.

107. In addition to monetary relief, Plaintiff seeks equitable relief in the form of an injunction precluding Defendant Jane Roe from further defaming Plaintiff and referring to him as a sex criminal.

108. As a result of Defendant Jane Roe casting Plaintiff in a false light, he has suffered damages in an amount to be determined at trial, plus prejudgment interest, and seeks equitable relief in the form of an injunction precluding Defendant Jane Roe from referring to Plaintiff as a sex criminal, and is entitled to any further relief the court deems just and proper. As a result of Defendant Jane Roe's intentional, malicious and brazen misconduct, Plaintiff is also entitled to an award of punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Tortious Interference with Prospective Business Advantage**

109. Plaintiff repeats each and every allegation above as if fully set forth herein.

110. Plaintiff at all relevant times had a prospective business relationship with the NFL teams that were considering drafting Plaintiff in the 2025 NFL Draft.

111. Plaintiff at all relevant times had a prospective business relationship with corporations and other organizations who were willing to enter into commercial agreements with Plaintiff to use his name, image, and likeness to endorse their products and services, in keeping with the precedent of other top draft prospects.

112. At all relevant times, Defendant Jane Roe had actual knowledge of Plaintiff's status as a star collegiate football player and NFL prospect. Defendant Jane Roe had actual knowledge that Plaintiff stood to make a substantial amount of money as an NFL player, both in salary and bonuses from the team that drafted him, and in endorsements.

113. Roe made the False Statements with the specific intent of causing immediate injury to Plaintiff in retaliation for Plaintiff's rejection of her.

114. Defendant's False Statements were intentional, willful, and unjustifiable. By making the False Statements, Defendant Jane Roe intentionally and unjustifiably interfered with the relationships between Plaintiff and the NFL teams considering drafting him, and Plaintiff and the corporations and organizations considering entering into endorsement deals with him. The false statements are unjustifiable in that they are wholly false, and Defendant had no legitimate reason to make, endorse, or encourage them.

115. Defendant's actions have caused significant reputational and professional injury to Plaintiff and his professional prospects.

116. Plaintiff has suffered actual damages as a result of Defendant's tortious interference with prospective business advantage in an amount to be determined at trial. Plaintiff is also entitled to attorneys' fees and punitive damages in an amount to be determined at trial.

117. Accordingly, Plaintiff respectfully demands judgment against Defendant Jane Roe in an amount to be determined at trial, including but not limited to actual damages, punitive

damages, attorneys' fees, costs, interest, and other just and further relief as this Court deems just and equitable.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

118. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

119. Defendant Jane Roe engaged in intentional and outrageous conduct by falsely reporting to the Frisco Police Department and other third-party individuals that Plaintiff sexually assaulted her.

120. Defendant Jane Roe knew and intended that her false statements to the Frisco Police Department and other third-party individuals would irreparably tarnish Plaintiff's reputation in the community and jeopardize his position in the 2025 NFL Draft.

121. Plaintiff suffered severe emotional distress due to Jane Roe's intentional and outrageous conduct, which affected his ability to sleep, eat, engage with his family, and his enjoyment of life, and also left him anxious and fearful of future malicious acts by Jane Roe intended to jeopardize his career, freedom and reputation in his community.

122. As a result of Defendant Jane Roe's intentional infliction of emotional distress upon Plaintiff, he has suffered actual damages in an amount to be determined at trial, including economic losses and compensatory harm, and is entitled to any further relief the court deems just and proper. As a result of Defendant Jane Roe's intentional, malicious and brazen misconduct, Plaintiff is also entitled to an award of punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE,** for the foregoing reasons, Plaintiff Isaiah Bond demands judgment against Defendant Jane Roe as follows:

(i) On the first cause of action for Defamation *Per Se*, a judgment awarding Plaintiff damages in an amount to be determined at trial, including economic, compensatory and punitive damages, and equitable relief precluding Defendant Jane Roe from expressly or indirectly referring to Plaintiff as a sexual predator;

(ii) On the second cause of action for False Light, a judgment awarding Plaintiff monetary damages in an amount to be determined at trial, including economic, compensatory and punitive damages, and equitable relief precluding Defendant Jane Roe from referring to Plaintiff as a sexual predator;

(iii) On the third cause of action for Tortious Interference with Prospective Business Advantage, a judgment awarding Plaintiff monetary damages in an amount to be determined at trial, including economic, compensatory and punitive damages;

(iv) On the fourth cause of action for Intentional Infliction of Emotional Distress, a judgment awarding Plaintiff monetary damages in an amount to be determined at trial, including economic, compensatory and punitive damages, and

(v) Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Isaiah Bond demands a trial by jury of all issues presented herein that are capable of being tried by a jury.

**Dated:** New York, New York
April 15, 2025

                              **Respectfully submitted,**

                              **NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff Isaiah Bond*

**By:** */s/ Kristen Mohr*
**Kristen Mohr, Esq.**
**Texas Bar No. 24145214**
**363 Seventh Avenue, 5th Floor**
**New York, New York 10001**
**(212) 736-4500**
**kmohr@nmllplaw.com**